**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |  |
|---|---|---|
| **SANDHYA AQUA EXPORTS PRIVATE LIMITED,** | ) ) ) ) |  |
| **Plaintiff,** | ) ) ) |  |
| v. | ) ) | **Court No. 26-01706** |
| **UNITED STATES,** | ) ) ) |  |
| **Defendant.** | ) ) ) |  |

**COMPLAINT**

Sandhya Aqua Exports Private Limited ("Plaintiff" or "Sandhya"), by and through its counsel, hereby alleges and states as follows:

**JURISDICTION**

1.      Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the nineteenth administrative review of the antidumping duty ("AD") order on certain frozen warmwater shrimp from India, Case No. A-533-840, issued by the International Trade Administration of the United States Department of Commerce ("Commerce"). *See Certain Frozen Warmwater Shrimp From India: Final Results of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 5,717 (Dep't Commerce Feb. 9, 2026) ("*Final Results*") and accompanying Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India; 2023-2024, (Jan. 28, 2026).

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this action is commenced pursuant to 19 U.S.C. § 1516a.

**STANDING**

3.      Sandhya is an Indian producer and exporter of the subject frozen warmwater shrimp and participated as a mandatory respondent in the proceeding before Commerce that resulted in the contested *Final Results*.  Therefore, Sandhya is an interested party within the meaning of 19 U.S.C. § 1677(9)(A).  Accordingly, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS OF THIS ACTION**

4.      On February 9, 2026, Commerce published in the Federal Register the final results of the first administrative review of the antidumping duty order.  *Final Results*, 91 Fed. Reg. 5,717.

5.      On March 11, 2026, Plaintiff timely filed a Summons to commence this action in accordance with 19 U.S.C. § 1516a(a)(2)(A).

6.      Plaintiff is timely filing this Complaint in accordance with 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of this Court, as this complaint is being filed within 30 days of the filing of the Summons, which was filed on March 11, 2026.

**STATEMENT OF FACTS**

7.      On April 9, 2024, Commerce initiated the contested administrative review of the antidumping duty order on Frozen Warmwater Shrimp from India.  *See  Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 24,780 (Dep't Commerce April 9, 2024) ("*Initiation Notice*").  Commerce's period of review was February 1, 2023 through January 31, 2024.  Commerce selected as mandatory respondents Sandhya and

2

another Indian producer/exporter, Devi Fisheries Limited and its affiliated companies ("Devi" or "Devi Group").

8.    On June 25, 2024, Commerce issued an antidumping duty questionnaire to Sandhya. Sandhya fully responded to Commerce's antidumping duty questionnaire and subsequent supplemental questionnaires. *See* Sandhya's July 23, 2024 Section A Response; Sandhya's August 21, 2024 Sections B-D Response; Sandhya's February 27, 2025 Supplemental Sections A-B Response; Sandhya's March 24, 2025 Supplemental Section C Response; Sandhya's April 3, 2025 Supplemental Section D Response.

9.    As part of this fact-gathering and questionnaire process, on September 16, 2024, a domestic interested party, the American Shrimp Processing Association ("ASPA"), submitted a particular market situation allegation, alleging that Sandhya's cost of producing subject frozen warmwater shrimp was affected by a particular market situation under 19 U.S.C. § 1677b(e) related to the labor market in India. *See* Letter from ASPA Re: "Sandhya Particular Market Situation Allegation" (Sept. 16, 2024). Sandhya responded with factual information submissions and argument to demonstrate that no such particular market situation existed, and even if one did, no adjustment to Sandhya's reported costs was warranted. *See* Letter from Sandhya Re: "Factual Information to Rebut, Clarify, and Correct Petitioner's Particular Market Situation Allegation" (Oct. 29, 2024); *see also* Letter from Sandhya Re: "Factual Information to Rebut, Clarify, and Correct the Department's Particular Market Situation Factual Information" (May 23, 2025).

10.    On June 11, 2025, Commerce issued its *Preliminary Results*. *See Certain Frozen Warmwater Shrimp From India: Preliminary Results of Antidumping Duty Administrative Review; 2023-2024*, 90 Fed. Reg. 24,569 (Dep't Commerce June 11, 2025) ("*Preliminary Results*"). In its *Preliminary Results*, Commerce calculated antidumping duty margins of 5.32

percent for Sandhya and 2.01 percent for Devi. *Id.* As part of its *Preliminary Results*, Commerce assigned a preliminary margin of 3.96 percent to all other named respondents based on the average of the rates calculated for the mandatory respondents. *Id.* In its *Preliminary Results*, Commerce did not address the particular market situation allegation, instead indicating it would address the allegation in a subsequent post-preliminary decision memorandum.

11. On July 15, 2025, Commerce issued a post-preliminary analysis memorandum and updated margin calculations. *See* Commerce Memorandum Re: "Post Preliminary Analysis in the 2023-2024 Administrative Review of the Antidumping Order on Certain Frozen Warmwater Shrimp from India" (Jul. 15, 2025) ("Post Preliminary Memorandum"). In its post-preliminary analysis, Commerce modified two aspects of its calculations. First, without any prior notice or discussion, Commerce adopted a wholesale modification to its differential pricing analysis. *Id*. at 3-5. Instead of using its former Cohen's *d* test, Commerce instead adopted a new test in which Commerce analyzed whether there was a two percent or greater difference between an individual transaction's price and the average price in a control group. *Id*. at 4. Commerce also modified its analysis to remove the former "mixed methodology" from among the calculation alternatives, instead automatically reverting to the average-to-transaction method where 33 percent or more of the sales "passed" this new two percent price difference test. *Id*. at 2.

12. Second, Commerce addressed the particular market situation allegation, determining that a particular market situation existed and applied an upward adjustment to the respondents' reported costs where the margin comparisons were to constructed value. *Id*. at 5-12. As a result of these two changes, Sandhya's antidumping duty margin remained unchanged in the post-preliminary results, but these two decisions paired with other decisions in the

4

*Preliminary Results* and *Final Results* adversely affected Sandhya's antidumping duty margin calculations.

13.    Subsequent to the *Preliminary Results* and post-preliminary analysis, interested parties, including Sandhya and Devi, submitted case and rebuttal briefs.  Sandhya's case brief raised arguments related to (1) the Commerce's differential pricing test, (2) Commerce's determination that a "particular market situation" existed with respect to labor costs in India, (3) various calculation issues, including Commerce's assignment of surrogate costs for products that were produced but not sold, Commerce's treatment of expenses incurred in Sandhya's third country Canadian market, and the treatment of export subsidies Commerce found in a related countervailing duty investigation of Frozen Warmwater Shrimp from India.

14.    On January 28, 2026, Commerce issued its *Final Results*.  In the Final Results Commerce modified aspects of its analysis from that presented in the *Preliminary Results* and post-preliminary analysis, while certain decision points remained unchanged.  In particular, Commerce continued to apply its recently-modified differential pricing test, Commerce continued to find that a particular market situation existed in India with respect to the labor market (though Commerce did modify aspects of its analysis and calculations), Commerce continued to make no adjustment to the antidumping duty calculations or required cash deposits to account for export subsides, and Commerce continued to assign surrogate costs to products sold but not produced using Commerce's own SAS computer analysis rather than the costs Sandhya reported.  As a result of these various modifications, Commerce recalculated Sandhya's antidumping duty margin, resulting in a 5.08 percent duty rate.  *See Final Results*, 91 Fed. Reg. at 5,178.  Commerce also updated Devi's calculations resulting in a final antidumping duty

5

margin of 2.71 percent, and an average rate of 3.76 percent applicable to all non-examined respondents. *Id.*

16. The legal and factual bases for Commerce's *Final Results* were set forth in the agency's unpublished Issues and Decision Memorandum, dated January 28, 2026.

**STATEMENT OF CLAIMS**

16. Commerce's *Final Results* is unsupported by substantial record evidence and is otherwise not in accordance with law in the following respects:

**COUNT I – Differential Pricing**

17. Paragraphs 1 through 16 of this Complaint are incorporated herein by reference.

18. In its *Final Results*, Commerce continued to apply its new "Differential Pricing" test as set forth in the post-preliminary analysis.  Commerce has since adopted this test in numerous other proceedings, and Commerce's analysis is now before this Court in at least one remand proceeding.  *See Stupp Corporation et. Al v. United States* (Ct. No. 15-00334).  However, Commerce's application of the new two percent differential pricing test was implemented without proper notice and comment, establishes arbitrary thresholds, and improperly extends the average-to-transaction method to sales where Commerce did not find any meaning price difference, even under its own strained and flawed test.

19. Commerce's application of its new two percent differential pricing test was unlawful, unsupported by substantial record evidence, and arbitrary in multiple respects.

**COUNT II – Particular Market Situation**

20.  Paragraphs 1 through 19 of this Complaint are incorporated herein by reference.

21. In its *Final Results*, Commerce determined that a "particular market situation" existed during the POR with respect to labor costs in India.  Sandhya and other interested parties

6

submitted substantial record evidence showing that no such situation existed within the meaning of the statute and that, even if such a situation did exist, there was no factual or legal basis to adjust Sandhya's costs to account for any such market situation. Among other considerations, there was no evidence that any such particular market situation in the labor market in India affected Sandhya's actual costs, nor was the situation "particular" as Commerce's analysis appears to apply to the entire labor market in India.

22.     For these and other reasons, Commerce's determination that a particular market situation existed and consequent adjustment to Sandhya's reported costs was unreasonable, unsupported by substantial record evidence and contrary to law.

### COUNT III – Surrogate Costs for Products Not Produced

23.     Paragraphs 1 through 22 of this Complaint are incorporated herein by reference.

24.     Sandhya reported sales data for certain subject products which the company did not produce during the period. Consistent with Commerce's normal data reporting and analysis requirements, Commerce needed a corresponding cost of production for these products even though they were not produced during the period. Accordingly, Sandhya prepared cost data for these products consistent with Sandhya's normal books and records and reporting for products that were actually produced during the period. Despite the fact that these products were not produced these "surrogate" costs were not made up or fictional; rather, they were based on the same methodologies and data used to prepare cost data for the products that were produced. Commerce did not question these data. Nonetheless, Commerce reassigned these reported costs to instead base the costs for these products on the costs for similar products actually produced during the period.

25.     Having reported adequate cost information, Commerce's reassignment of the cost data for these products was unsupported by substantial record evidence and contrary to law.

## COUNT IV – Comparison Market Expenses and Net Price Calculations

26.     Paragraphs 1 through 25 of this Complaint are incorporated herein by reference.

27.     Because Sandhya did not have a viable home market, Sandhya reported comparison market sales data for its sales to Canada to serve as the basis of normal value.  In so doing, Sandhya reported data with respect to indirect selling expenses and inventory carrying costs the company's Canadian affiliate incurred within Canada.

28.     Commerce did not deduct these expenses from Canadian gross unit price, whereas the parallel expenses incurred by the company's affiliate in the United States were deducted from U.S. price.  Commerce's failure to deduct these expenses from the Canadian price resulted in an inequitable comparison that was not a true "apples-to-apples" price comparison.  Pursuant to 19 U.S.C. § 1677b(a)(6)(B)(ii) these expenses should have been deducted from the reported Canadian prices, rendering Commerce decision on this issue contrary to law.

## COUNT V – CVD Offset

29.     Paragraphs 1 through 28 of this Complaint are incorporated herein by reference.

30.     At the time of this administrative review, Commerce had recently completed a countervailing duty investigation of Frozen Warmwater Shrimp from India.  *See Frozen Warmwater Shrimp From Indonesia: Antidumping Duty Order; Frozen Warmwater Shrimp From Ecuador, India, and the Socialist Republic of Vietnam: Countervailing Duty Orders*, 89 Fed. Reg. 104,928 (Dept. of Commerce, Dec. 26, 2024).  Pursuant to 19 U.S.C. § 1677a(c)(1)(C), the Department is to account for any countervailable export subsidy in its antidumping duty calculations to avoid imposing a double remedy.  However, in the *Final Results* Commerce declined to make any adjustment to account for the export subsidies the agency found in the countervailing duty investigation.

31.     Despite the agency's decision not to account for any export subsidies in the *Final Results*, in the similarly-situated administrative review of Frozen Warmwater Shrimp from Vietnam, Commerce did adjust the calculated cash deposit rates to account for countervailable subsidies Commerce found in the countervailing duty investigation of Frozen Warmwater Shrimp from Vietnam. *See Certain Frozen Warmwater Shrimp From the Socialist Republic of Vietnam: Final Results of and Final Rescission of Review, in Part, of Antidumping Duty Administrative Review; 2023-2024*, 91 Fed. Reg. 8,429 (Dept. of Commerce Feb. 23, 2026) (and accompanying Issues and Decision Memorandum).

32.     Commerce decision to not make an adjustment in this case while making an adjustment in the Vietnam proceeding is contrary to law and arbitrary.

**REQUEST FOR RELIEF**

For the foregoing reasons, Sandhya respectfully requests that this Court hold

Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in

accordance with law.  Therefore, Sandhya respectfully requests that this Court remand the *Final*

*Results* to Commerce to correct the errors set forth in this complaint and provide other such relief

as this Court deems appropriate.

Respectfully submitted,

*/s/ Henry D. Almond*

Henry D. Almond
J. David Park
Lynn Fischer Fox
Kang Woo Lee
Archana Rao P. Vasa
Sally Alghazali
Jennifer Farrin
ARNOLD & PORTER KAYE SCHOLER LLP
601 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
PHONE:  +1 202.942.5698
EMAIL: Henry.Almond@arnoldporter.com

**Dated: April 10, 2026**

## <u>CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES</u>

**Sandhya Aqua Exports Private Limited v. United States**
**CIT Court No. 26-01706**

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I, Henry D. Almond, hereby certify that on April 10, 2026, I caused the foregoing Complaint to be served by certified mail, return receipt requested, and notified all interested parties who were a party to the proceeding below as follows:

**<u>On Behalf of AHSTAC:</u>**
Nathaniel Rickard, Esq.
Picard Kentz & Rowe LLP
1155 Connecticut Ave., Suite 700
Washington, D.C. 200036
nrickard@pkrllp.com

**<u>On Behalf of Ananda Group, et. al.:</u>**
Robert LaFrankie, Esq.
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
rlafrankie@crowell.com

**<u>On Behalf of American Shrimp Processors Association et. al.</u>:**
Roger B. Schagrin, Esq.
Schagrin Associates
900 7th Street, NW, Suite 500
Washington, DC 20001
rschagrin@schagrinassociates.com

**<u>On Behalf of U.S. Shrimpers Coalition:</u>**
Adam Henry Gordon, Esq.
The Bristol Group PLLC
1707 L Street, NW, Suite 1050
Washington, D.C. 20036
adam.gordon@bristolgrouplaw.com

/s/ Henry D. Almond
Henry D. Almond
Arnold & Porter Kaye Scholer LLP

## <u>CERTIFICATE OF SERVICE</u>

**Sandhya Aqua Exports Private Limited v. United States**
**CIT Court No. 26-01706**

I, Henry D. Almond, of the law firm of Arnold & Porter Kaye Scholer LLP, hereby certify that on April 10, 2026, I caused copies of the foregoing Complaint to be served by certified mail, return receipt requested, upon the following:

**<u>Upon the United States</u>:**
Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278-0001

Attorney-In-Charge
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW, Room 12124
Washington, DC 20530

**<u>Upon the Department of Commerce</u>:**
General Counsel
U.S. Department of Commerce
Mail Stop 5875 HCHB
14th Street & Constitution Avenue, NW
Washington, DC 20230

Chief Counsel
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
1401 Constitutional Ave., NW
Washington DC 20230

/s/ Henry D. Almond
Henry D. Almond
Arnold & Porter Kaye Scholer LLP